UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CARLOS MIRAMONTES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-3019-B |
| | § | |
| PERATON INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Peraton Inc.'s Motion to Strike Jury Demand (Doc. 17). As explained below, the Court **GRANTS** the Motion and **STRIKES** Plaintiff Carlos Miramontes's jury demand.

## I.

## BACKGROUND[1]

This is an employment discrimination case. Plaintiff Carlos Miramontes was employed by Perspecta, Inc. and its predecessors for twenty-seven years. Doc. 2-1, Original Pet., ¶ 5.1. Originally hired in 1995, Miramontes eventually rose to Senior Category Manager at Perspecta. *Id.* In February 2021, Defendant Peraton Inc., a technology company that specializes in space, intelligence, cybersecurity, defense, homeland security, and health, announced that it was acquiring Perspecta. *Id.* ¶ 5.2; Doc. 17, Mot. Strike, 1.

---

[1] When evaluating a motion to strike a jury demand, "[a]ll evidence is viewed in the light most favorable to the nonmoving party"—in this case, Miramontes. *See Servicios Comerciales Lamosa, S.A. de C.V. v. De la Rosa*, 328 F. Supp. 3d 598, 605 & n.2 (N.D. Tex. 2018) (Lindsay, J.).

On April 26, 2021, Peraton sent Miramontes a proposed employment agreement titled "Employee Letter of Understanding" (the "Letter of Understanding") with an attached cover letter offering Miramontes continued employment with Peraton. Doc. 17, Mot. Strike, 1; *see* Doc. 17-1, Def.'s App., 8–12; Doc. 19, Resp., Ex. C at 28. The Letter of Understanding asked the employee to agree with the following provision:

> No promise of a specified term of employment has been made to me by any Company representative. I understand and agree that my employment with the Company has no definite period and can be terminated at will by either me or the Company, with or without cause and with or without notice, for any reason not prohibited by law or no reason at all. I understand and agree that nothing herein or in the Peraton Code of Conduct and company policies and procedures alters the basic at-will relationship between me and the Company.

Doc. 17-1, Def.'s App., 8. The Letter of Understanding also included a dispute resolution and arbitration agreement, which stated in relevant part

> **DISPUTE RESOLUTION / ARBITRATION AGREEMENT**
> 4. Subject to Paragraph 5 below, in the event of a dispute arising from, or related to, this Agreement or any aspect of my employment or termination thereof ("Dispute"), I acknowledge and agree that I am required to comply with the Company's dispute resolution procedures as follows:
> . . .
> B. If the discussions and/or mediation are unsuccessful and either the Company or I bring an action in court arising from or relating to a Dispute, the following additional procedures apply: (i) **neither the Company nor I shall request a jury trial in such action, and each of the Company and I hereby waive our right to trial by jury of any Dispute** . . . .

*Id.* The Letter of Understanding also contained a provision stating that the employee "understand[s] that [he] may consult an attorney of [his] choice before signing this Agreement." *Id.* at 11. The cover letter explained that Miramontes could accept the offer of employment by signing the Letter of Understanding within ten business days. Doc. 19, Resp., Ex. C at 28. Miramontes signed the Letter of Understanding on May 6, 2021. *See* Doc. 17-1, Def.'s App., 12.

On July 1, 2021, Peraton informed Miramontes that it was terminating his employment. Doc. 2-1, Original Pet., ¶ 5.5. Miramontes sued Peraton in state court on November 3, 2021, bringing claims for breach of contract; negligent misrepresentation; fraud; violation of the Deceptive Trade Practices Act; and wrongful termination based on race, color, and age discrimination in violation of Chapter 21 of the Texas Labor Code. *Id.* at 4–8. In his petition, Miramontes requested a jury trial. *Id.* ¶ 12.1. Peraton removed to this Court on December 3, 2021. *See* Doc. 1, Notice of Removal.

Peraton moved to strike Miramontes's jury demand, arguing that Miramontes waived his right to a jury trial by signing the Letter of Understanding. Doc. 17, Mot., 3. Miramontes asks the Court to allow the parties to conduct additional discovery before ruling on the Motion to Strike. Doc. 19, Resp., 3–5. Alternatively, Miramontes argues the Court should deny the Motion to Strike because the waiver was obtained by fraud; the waiver was not knowing, voluntary, and intelligent; and Miramontes had no opportunity to negotiate, bargaining power, or representation by counsel. *Id.* at 5–11. The Court considers the Motion below.

## II.

## LEGAL STANDARD

The Seventh Amendment to the U.S. Constitution protects the right to a jury trial in civil suits. U.S. Const. amend. VII. Once a party demands a jury trial, a court cannot try the matter without a jury unless the parties consent or the court determines no right to a jury trial exists. Fed. R. Civ. P. 39(a). Whether a party has a right to a jury trial in federal court is a matter of federal law. *Simler v. Conner*, 372 U.S. 221, 222 (1963). The parties may raise the issue of whether a jury-trial right exists by motion, or a court may raise the issue *sua sponte*. Fed. R. Civ. P. 39(a)(2).

Parties may waive their right to a jury trial by prior written consent. *RDO Fin. Servs. Co. v.*

*Powell*, 191 F. Supp. 2d 811, 813 (N.D. Tex. 2002) (Lynn, J.) (citing *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986)). Because the right to a jury trial is fundamental, courts recognize a presumption against waiver. *Jennings v. McCormick*, 154 F.3d 542, 545 (5th Cir. 1998). However, if a written waiver agreement is made knowingly, voluntarily, and intelligently, courts will generally enforce the agreement. *Servicios Comerciales Lamosa*, 328 F. Supp. 3d at 619.

The party seeking to enforce a waiver bears the burden of showing the waiver was made knowingly, voluntarily, and intelligently. *Powell*, 191 F. Supp. 2d at 813. In determining whether a jury waiver was made knowingly, voluntarily, and intelligently, courts in the Northern District of Texas weigh four factors: (1) whether both parties had an opportunity to negotiate the terms of the agreement, (2) whether the provision waiving jury trial was conspicuous, (3) the relative bargaining power of the parties, and (4) the business acumen or professional experience of the party opposing the waiver.[2] *See, e.g.*, *Servicios Comerciales Lamosa*, 328 F. Supp. 3d at 619–20; *Powell*, 191 F. Supp. 2d at 813–14.

## III.

## ANALYSIS

The Court finds Miramontes knowingly, voluntarily, and intelligently waived his right to a jury trial by signing the Letter of Understanding. The waiver provision was negotiable and conspicuous, there was not a gross disparity in bargaining power between the parties, and

---

[2] Some courts in the Fifth Circuit add a fifth factor: whether a party was represented by counsel. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. Classic Home Fin., Inc.*, 2012 WL 201533, at *3 (S.D. Tex. Jan. 23, 2012), *aff'd*, 548 F. App'x 205 (5th Cir. 2013); *Westside–Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 56 F. Supp. 2d 694, 707 (E.D. La. 1999). However, courts in the Northern District of Texas consider whether a party was represented by counsel within the context of the bargaining power and business acumen factors, not as a separate factor. *See, e.g.*, *Servicios Comerciales Lamosa*, 328 F. Supp. 3d at 620.

Miramontes had sufficient business acumen and professional experience to evaluate the contract. Because Miramontes provides only conclusory allegations of fraud and alleges fraudulent inducement on the contract as a whole, not on the jury waiver specifically, fraud is not a barrier to enforcement.

A.   *Negotiability*

In determining whether a contract was negotiable, the Court first asks whether the parties actually negotiated the terms of the contract. *See Servicios Comerciales Lamosa*, 328 F. Supp. 3d at 621. Ultimately, however, "the question is whether there was an opportunity for negotiation." *Jones v. Tubal-Cain Hydraulic Sols., Inc.*, 2017 WL 3887235, at *2 (S.D. Tex. Sept. 5, 2017). When evaluating the negotiability of employment contracts, courts often consider whether a contract term was unilateral or bilateral. *See, e.g., id.*; *Powell*, 191 F. Supp. 2d at 814. If a contract term binds only one of the parties, this generally suggests the party "lacked a realistic opportunity to negotiate." *See Powell*, 191 F. Supp. 2d at 814. Conversely, a term that binds both parties suggests the parties had a meaningful opportunity to negotiate. *See Jones*, 2017 WL 3887235, at *2.

Because both Miramontes and Peraton waived their right to a trial by jury, the first factor supports enforcing the waiver. *See id.* (finding the opportunity to negotiate supported enforcing waiver where both parties to an employment contract were bound by an arbitration provision). The Letter of Understanding states, "[E]ach of the Company and I hereby waive our right to trial by jury of any Dispute." Doc. 17-1, Def.'s App., 8 (bold font omitted). Miramontes argues that the terms of the Letter of Understanding were not negotiable because "there was no actual negotiation over the terms of the Letter of Understanding," and Peraton did not "inform [Miramontes] that there was an opportunity for negation of the terms." Doc. 19, Resp., 9. However, these facts, on their own, are insufficient to show Miramontes lacked a reasonable opportunity to negotiate. A party may have an

opportunity to negotiate without the other party announcing this opportunity. *See Jeffrey J. Glaser, MSD, P.A. v. Compass Bank, N.A.*, 2010 WL 11553124, at *3 (E.D. Tex. July 14, 2010) (rejecting the plaintiff's argument that a contract was not negotiable because he "was never informed that the contract terms were negotiable"). Because the bilateral waiver prohibits both Miramontes and Peraton from requesting a jury trial, the first factor, negotiability, supports enforcing waiver.

B.      *Conspicuousness*

"Courts determine the conspicuousness of jury waiver clauses on a case-by-case basis, and consider factors such as the typeface, the length of the document, and the location of the waiver clause." *Zavala v. Aaron's, Inc.*, 2015 WL 5604766, at *2 (E.D. Tex. Sept. 23, 2015). Courts have also looked to whether waiver clauses have labeled headings. *See Servicios Comerciales Lamosa*, 328 F. Supp. 3d at 622.

The Court finds that the jury waiver in the Letter of Understanding is conspicuous. The Letter of Understanding is only five pages long. *See* Doc. 17-1, Def.'s App., 8–12. In approximately the middle of the first page is a heading labeled in bold font and all capitals "**DISPUTE RESOLUTION / ARBITRATION AGREEMENT**." *See id.* at 8. Later on the first page, the Letter of Understanding states in bold font: "**neither the Company nor I shall request a jury trial in such action, and each of the Company and I hereby waive our right to trial by jury of any Dispute**." *See id.* Other than the headings, this clause is the only part of the first page that is in bold font. *See generally id.* Miramontes protests that the waiver clause was "buried" in the Letter of Understanding, *see* Doc. 19, Resp., 10, but various textual mechanisms belie this claim. In light of the brevity of the Letter of Understanding, the location of the waiver clause, and the emphasis provided by bold font and capitals, the Court finds that the jury waiver was conspicuous.

C.  *Bargaining Power*

"Inequality in bargaining power suggests a jury waiver was not executed knowingly or intelligently." *Zavala*, 2015 WL 5604766, at *3. However, "[t]o invalidate a waiver provision . . . the bargaining differential must be the kind of extreme bargaining disadvantage or gross disparity in bargaining position that occurs only in certain exceptional situations." *Westside–Marrero*, 56 F. Supp. 2d at 709 (internal quotations omitted). In evaluating a party's bargaining power, courts will consider whether the party was represented by counsel. *See Servicios Comerciales Lamosa*, 328 F. Supp. 3d at 620. However, if a party had the opportunity to consult an attorney, it is not necessary that he actually consulted an attorney. *See Williams v. Aire Serv, LLC*, 2019 WL 13150025, at *3–4 (W.D. Tex. June 12, 2019) (finding the parties' relative bargaining power supported enforcement where the plaintiff was informed of his opportunity to consult with counsel but did not have counsel present).

Although employees often have less bargaining power than their employers in contract negotiations, "the relative bargaining positions of the parties in their roles as employer and employee are not so disparate as to render the jury waiver unenforceable under these circumstances alone." *Zavala*, 2015 WL 5604766, at *3. Even "the possibility of being fired/not hired alone is not sufficient to constitute the type of disparity in bargaining position that would nullify [a jury waiver]." *Id.* at *3 n.1. Courts look for situations where an employee "could not have found employment with another company that did not require a jury trial waiver." *Id.* at *3. Additionally, courts may find a gross disparity in bargaining power where an employee's "personal circumstances were dire, he was under duress, or [he] had no other option than to accept the job on the terms [the employer] offered." *Jones*, 2017 WL 3887235, at *3.

The Court finds that although Miramontes and Peraton did not have equal bargaining power,

this inequality was not an "extreme bargaining disadvantage or gross disparity in bargaining position" such that the waiver is unenforceable. *See Westside–Marrero*, 56 F. Supp. 2d at 709. The Letter of Understanding informed Miramontes of his right to consult an attorney before signing the agreement. *See* Doc. 17-1, Def.'s App., 11. The bilateral application of the waiver clause also suggests there was no gross disparity in bargaining power. *See Branch Banking & Tr. Co. v. Price*, 2011 WL 5403403, at *2 (S.D. Miss. Nov. 8, 2011) (finding no gross disparity in bargaining power where "[t]he jury waiver in the agreement applie[d] equally to" both parties). Miramontes contends that he did not have the opportunity to negotiate the terms of the Letter of Understanding and he believed that if he did not sign, he would be fired. Doc. 19, Resp., 10. Neither of these contentions, without more, can support a finding of extreme bargaining disadvantage or gross disparity in bargaining position. *See Zavala*, 2015 WL 5604766, at *3 ("Even in the context of employment, a 'take it or leave it' situation alone does not make the waiver unenforceable or unconscionable."). Thus, the relative bargaining power supports enforcing the waiver clause.

D.  Business Acumen

Finally, courts consider "whether the parties are sophisticated enough to have comprehended the import of the language contained in the waiver clause." *Westside–Marrero*, 56 F. Supp. 2d at 708. Courts consider the party's business and professional experience, *see, e.g.*, *Zavala*, 2015 WL 5604766, at *2, their educational background, *see, e.g.*, *Glaser*, 2010 WL 11553124, at *2, and whether the party has experience entering contracts, *see Servicios Comerciales Lamosa*, 328 F. Supp. 3d at 623. A party need not have legal training. *See Glaser*, 2010 WL 11553124, at *2 (finding that plaintiff had sufficient sophistication to understand a jury trial waiver because he was a licensed dentist). If the language of the jury waiver is clear, it is sufficient for the party to have ordinary sophistication. *See*

*Zavala*, 2015 WL 5604766, at *2 ("An understanding of the clear and unambiguous language of the jury waiver requires no extraordinary level of sophistication.").

Where a party's background does not particularly prepare him to understand the jury waiver but the waiver is unambiguous, courts have found the factor favors neither party. *See, e.g.*, *Zavala*, 2015 WL 5604766, at *2; *Westside–Marrero*, 56 F. Supp. 2d at 708. Miramontes worked at Perspecta, Inc. and its predecessors for twenty-seven years, during which time "transfer of ownership [of the business] was a common occurrence." Doc. 2-1, Original Pet., ¶¶ 5.1–5.2. Although Miramontes states that he "had never seen jury trial waiver language in his [twenty-seven] year career," *see* Doc. 19, Resp., 11, given his decades of experience, Miramontes "can be presumed to understand the importance of reading contracts before signing them." *See Servicios Comerciales Lamosa*, 328 F. Supp. 3d at 623. And the language of the jury waiver is clear and does not require extraordinary sophistication to understand. Because Miramontes had no background that prepared him to understand the significance of the jury trial waiver, the Court finds that this factor does not favor either party.

After weighing the negotiability, conspicuousness, bargaining power, and business acumen factors, the Court finds that Miramontes knowingly, voluntarily, and intelligently waived his right to a jury trial by signing the Letter of Understanding.

E.   *Additional Arguments Against Enforcement*

Miramontes raises several additional arguments against enforcement of the jury waiver. First, he argues that the jury waiver was obtained by fraud. Doc. 19, Resp., 5–6. Miramontes claims he "was baited into signing the Letter of Understanding, which contains the jury waiver language, with a promise of future employment." *Id.* at 6. But as noted above, the threat of being fired alone is not

-9-

enough to render a jury waiver unenforceable. *See Zavala*, 2015 WL 5604766, at *3. Further, for fraud to affect a jury waiver's validity, the jury waiver itself must have been fraudulently induced. *See Evans v. Union Bank of Switz.*, 2003 WL 21277125, at *2 n.1 (E.D. La. May 30, 2003); *see also Alam v. Fannie Mae*, 2005 WL 8168877, at *9–10 (S.D. Tex. Sept. 29, 2005) (finding the plaintiff had not waived his right to a jury trial in part because "the specific jury waiver clause itself was the product of fraud").

Miramontes also claims, without citation to authority, that the Court should not enforce the jury waiver on the basis of breach of contract or failure of consideration. The Court has been unable to locate any authority to support this claim; indeed, the authority that the Court has found suggests the opposite. *See, e.g.*, *In re Reggie Packing Co.*, 671 F. Supp. 571, 573–74 (N.D. Ill. 1987) (refusing to find a jury waiver unenforceable despite allegations that the defendant breached the financing agreement that contained the jury waiver).

Finally, Miramontes asks the Court to refrain from ruling on the Motion to Strike until he can obtain discovery of "additional documents [that are] essential in determining whether [the Motion] should be granted or denied." Doc. 19, Resp., 4. This discovery concerns "the drafting, purpose, intent and communications surrounding the creation of the Letter of Understanding." *Id.* at 5. However, it is settled law in Texas that extrinsic evidence may not be used to add to, alter, or contradict the terms of an unambiguous contract. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 769 (Tex. 2018). Miramontes identifies no ambiguities in the contractual language that would allow the Court to consider the extrinsic evidence it seeks in discovery. Accordingly, the Court finds that the alleged discovery dispute does not support declining to rule on the Motion to Strike.

IV.

CONCLUSION

Because the Court finds that Miramontes knowingly, voluntarily, and intelligently waived his right to a jury trial by signing the Letter of Understanding, the Court **GRANTS** Peraton's Motion (Doc. 17) and **STRIKES** Miramontes's jury demand. The Clerk of Court is **DIRECTED** to place the case on the non-jury docket.

**SO ORDERED**.

**SIGNED: December 1, 2022.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE