IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CARLOS MIRAMONTES<br>Plaintiff, | §<br>§<br>§ | |
| vs. | §<br>§ | CIVIL ACTION NO. 3:21-CV-3019-B |
| PERATON, INC.,<br>Defendant. | §<br>§<br>§ | |

### PLAINTIFF'S MOTION AND BRIEF FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

Respectfully submitted,

*/s/ Joseph E. Ackels, Sr.*
Joseph E. Ackels, Sr.
State Bar No. 00829980
joe@ackelslaw.com
Joseph E. Ackels, Jr.
State Bar No. 24097274
joe-jr@ackelslaw.com
ACKELS & ACKELS, L.L.P.
3030 LBJ Freeway, Suite 1550
Dallas, Texas 75234
Tel: (214)-267-8600
Fax: (214)-267-8605
Attorneys for Plaintiff

i

## TABLE OF CONTENTS

|  |  | PAGE |
|---|---|---|
| I. | OVERVIEW OF MOTION | 1-2 |
| II. | MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE | 2-3 |
|  | A. The Stemberger/Capalbo Text Messages | 3-5 |
|  | B. Deleted Text Messages Prejudiced Plaintiff | 5-6 |
|  | C. The Lori Ellis Agendas/Communications Regarding Project Falcon | 6-7 |
|  | D. Defendant's duty to preserve the evidence | 8-9 |
|  | E. Defendant's bad faith. | 9-10 |
|  | F. Prejudice | 10 |
| III. | Requested Relief | 11 |

## TABLE OF AUTHORITIES

**Case**                                                                                                                     **Page**

*Ashton v. Knight Transp., Inc.,* 772 F. Supp. 2d 772, 775-6 2011 ............................... 2, 8-11

*Chambers v. NASCO,* 501 U.S. 32, 44, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) ............... 2

*Rimkus Consulting Group, Inc. v. Cammarata,* 688 F. Supp. 2d 598, 611
(S.D. Tex. 2010). ................................................................................................................ 2-3

*Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 590 (4th Cir. 2001)
(citing *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779
(2d Cir. 1999)) .................................................................................................................... 2

*Victor Stanley v. Creative Pipe, Inc.,* 269 F.R.D. 497, 520-21 (D. Me. 2010) .......... 3, 8, 11

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CARLOS MIRAMONTES** | § | **CIVIL ACTION NO. 3:21-CV-3019-B** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | |
| | § | |
| **PERATON, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF'S MOTION AND BRIEF FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW CARLOS MIRAMONTES, Plaintiff and files his Motion for Sanctions against Defendant Peraton, Inc. and in support thereof would show the Court as follows:

## I. OVERVIEW OF MOTION

Plaintiff is a 57-year-old Hispanic male and was terminated by Peraton, Inc.'s Category Manager, Victor Stemberger on July 1, 2021, just a few months after Mr. Miramontes received a glowing evaluation from his boss, Joe Capalbo. App. 001-007 of Document #41.[1] Plaintiff brought this lawsuit because he believed the termination breached his contractual agreement with Peraton, Inc. and because he believes Mr. Stemberger and Peraton, Inc. terminated him for discriminatory reasons. App. 001-0012 of Document #2.[2] In fact, Mr. Miramontes states that in the zoom call terminating him, Mr. Stemberger said twice (without any provocation): "[i]t has nothing to do with your age. It has nothing to do with your age". App. 016.[3] Discovery has

---

[1] See Exhibit 1 of Sealed Appendix In Support of Plaintiff's Response to Defendant's Motion for Summary Judgment (Document # 41).
[2] See Exhibit 1 of Appendix in Support of Defendant's Notice of Removal (Document # 2).
[3] See Exhibit 2 of the Appendix in Support of this Motion, p. 56: lines 4-5 and 20-22.

Motion for Sanctions                             Page 1                                    3P-6249V

revealed that Mr. Stemberger had numerous communications internally at Peraton with one Joe Capalbo (another of Mr. Miramontes' superiors) and Lori Ellis (another Mr. Stemberger's superiors) regarding Plaintiff's termination. In an attempt to justify the termination as merely a "reduction in force", Mr. Stemberger testified in his deposition in this case that he had numerous written agendas regarding the roll-out of the reduction in force (called "Project Falcon"). App. 012-013.[4] This Project Falcon was not revealed by the defense until Mr. Stemberger's oral deposition taken on October 19, 2022. Further, in his deposition, Mr. Stemberger revealed that the day he received the demand letter from Plaintiff's counsel, he texted with Joe Capalbo and then DESTROYED THOSE TEXTS, subsequently. Mr. Stemberger disingenuously insisted that he was not told to save texts, only to save emails. App. 007.[5] Further, no agendas have been produced regarding Project Falcon meetings and not all emails between Stemberger, Capalbo and, Lori Ellis have been produced. Defendant's claim is that some of these documents cannot be located. App. 017-019.[6] Consequently, Plaintiff moves for sanctions against Defendant.

## II. MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

As this Court set forth in *Ashton v. Knight Transp., Inc.,* 772 F. Supp. 2d 772, 775-6 2011: "A federal court has the inherent power to sanction a party who has abused the judicial process. *Chambers v. NASCO, 501 U.S. 32, 44, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991).* The spoliation of evidence is one such abuse. *Rimkus Consulting Group, Inc. v. Cammarata, 688 F. Supp. 2d 598, 611 (S.D. Tex. 2010).* Spoliation is the "destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir.*

---

[4] See Exhibit 1 of Appendix in Support of this Motion, p. 53: lines 24-25 and pg. 54: lines 1-2.
[5] Id at pg. 32: lines 23-25.
[6] See Exhibit 3 of Appendix in Support of this Motion.

*2001)* (citing *West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999))*; BLACK'S LAW DICTIONARY 1531 (9th ed. 2009). Destroying or altering evidence, however, does not necessarily mean that the party has engaged in sanction-worthy spoliation. Instead, the Court must first find the existence of a duty to preserve the information, a culpable breach of that duty, and resulting prejudice to the innocent party. *Rimkus, 688 F. Supp. 2d at 612, 615-16*; *Victor Stanley v. Creative Pipe, Inc., 269 F.R.D. 497, 520-21 (D. Me. 2010)*.

In the instant case, critical evidence has either been destroyed or Defendant has failed to preserve it.

### A. The Stemberger/Capalbo Text Messages.

In his oral deposition, Mr. Stemberger referenced his receiving the Plaintiff's Demand Letter. App. App. 002, 004-006.[7] He was asked whether he had any text messages with anyone with regard to Miramontes. His answer was "I do." With "Joe Capalbo." App. 001.[8] Stemberger claimed he texted Capalbo about Miramontes the day he received the Demand Letter. App. 001.[9] He testified that he did not give the text messages with Capalbo to his lawyer to produce in this lawsuit. App. 002.[10] When asked if he would provide us with his texts at a break, his answer was that he deleted them. App. 002.[11]

Further, Mr. Stemberger admitted that he read the Demand Letter and specifically read the section about damages. App. 005.[12] The damages section is right above the "**LITIGATION HOLD**" paragraph therein. App. 020-023.[13] Stemberger texted Capalbo the same day he

---

[7] See Exhibit 1 to Appendix in Support of this Motion, pg. 23: lines 1-4, pg. 25: lines 12-17, pg. 26: lines 1-2, 22-23, pg. 30: lines 4-6, lines 14-16, and lines 20-25.
[8] Id at p. 22 lines 19-21.
[9] Id at pg. 22: lines 23-25 and p. 23: lines 1-4.
[10] Id at pg. 23: lines 13-15.
[11] Id at pg.23: lines 16-23.
[12] Id at pg. 26: lines 16-19 and 22-23.
[13] See Exhibit 4 to Appendix in Support of this Motion.

received the Litigation Hold notice, and subsequently destroyed the texts. App. 004.[14] Mr. Stemberger also asserted that he was not told to preserve text messages. He was only told to preserve emails.[15]

> Q. In the letter that you sent -- that you say you looked at, my demand letter, it has what is called a "Litigation Hold" paragraph in it. Are you -- after reading that "Litigation Hold" paragraph, you're saying that you destroyed your text messages with Mr. Capalbo with regards to Mr. Miramontes?
>
> * * * *
>
> A. Okay. So to be clear, my cell phone is not under a corporate domain. All of my electronic correspondence that I received internally from my legal organization has been around e-mail preservation, any written correspondence that I may have in the office, but I've -- I've never seen anything nor have I reviewed the deposition. I'm just -- I've been responding to instructions from the Peraton legal team: "Do not delete any e-mails."[16]

Mr. Stemberger's deposition testimony is interesting. He first claimed he read the demand letter and it was "all caps" and "very unprofessional."[17] When pressed as to what in the letter was "all caps" he claimed it referenced damages.[18] The reference to damages in the letter is found at page 3 of the Litigation Hold Letter. App. 020-023.[19] On that page there are two sections of "all caps," one section is entitled "**TOTAL ACTUAL DAMAGES**" and the other is the "**LITIGATION HOLD**" paragraph. Both sections are on the same page about one inch apart. Id. One cannot see one section without seeing the other. Mr. Stemberger then tried to dodge by saying he did not read all the letter, only the first paragraph. App. 005.[20] However, reluctantly he acknowledged that "[t]here was a monetary amount that was in the

---

[14] See Exhibit 1 to Appendix in Support of this Motion, pg. 25: lines 12-17.
[15] Id at pg. 32: lines 19-25.
[16] Id at pg. 23: lines 24-25 and pg. 24: lines 1-5, and 10-18.
[17] Id at pg. 25: lines 12-14 and 24-25.
[18] Id at pg. 26: line 22-23.
[19] See Exhibit 4 to Appendix in Support of this Motion, pg. 3.
[20] See Exhibit 1 to Appendix in Support of this Motion, pg. 26: lines 1-2.

correspondence" (found at page 3 of the letter), he still denied that he saw the "**LITIGATION HOLD**" language. "I absolutely did not." App. 006.[21]

Still, Mr. Stemberger claimed that he was never asked to produce text messages. App. 007.[22] Further, he claims he never told **anyone** he destroyed his texts.[23] Stemberger confirmed that Capalbo responded to his texts and there would be text message chains with Capalbo. App.[24] Stemberger's texts with Capalbo were not limited to the Demand Letter. He had been texting with Mr. Capalbo regarding Mr. Miramontes and Capalbo's own termination quite often.[25]

### B.  Deleted Text Messages Prejudice Plaintiff

The two individuals who made the decision to terminate Plaintiff are Stemberger and Capalbo. App. 024-025.[26] Consequently, text messages between Stemberger and Capalbo regarding Plaintiff or this litigation go directly to the question of: why was Plaintiff selected for termination? Additionally, very few communications between Stemberger and Capalbo have been produced by Defendant and no text messages between them have been produced.

Text messages and communications between Stemberger and Capalbo, which were deleted by Stemberger, are essential to support Plaintiff's contention in this litigation that the "Skills Matrix Template", which was supposed to be used to identify the employees who were to be terminated from employment, was not completed before Plaintiff was selected for termination and was instead fabricated and filled in after Plaintiff was selected for termination in order to cover up the real reason for his termination: his age and/or race.[27]

---

[21] Id at pg. 30: lines 17-20.
[22] Id at pg. 32: lines 22-25.
[23] Id at pg. 34: lines 6-9.
[24] Id at pg. 34: lines 23-25 and pg. 35: lines 1-5.
[25] Id at pg. 51: lines 16-25.
[26] See Exhibit 5 to Appendix in Support of this Motion, Response to Interrogatory No. 4A.
[27] See Plaintiff's Sealed Brief in Support of His Response to Defendant's Motion for Summary Judgment (Document #40) p. 23 and p. 32.

Furthermore, we still do not know who filled out the "Skills Matrix Template", but Stemberger testified it could have been Capalbo who was not Plaintiff's direct supervisor. App. 015.[28]

Stemberger testified that he identified Plaintiff for termination on June 1, 2021.[29] Two days after the decision to terminate Plaintiff was reached, on June 3, 2021, in an email from Lori Ellis (Stemberger's boss) to Capalbo, Ellis requested the following:

> "I have now been asked to have you complete the Skills Matrix Template to show that the individuals selected for separation were selected based on non-discriminatory factors." App. 026-028.[30]

It is clear, that after the decision to terminate Mr. Miramontes was made, corporate (Lori Ellis) asked Capalbo to show that he was terminated based on non-discriminatory factors. This is an after the fact effort to conceal the facts.

There may be other employees of the Defendant with whom Mr. Stemberger texted. Defendant has produced ZERO texts.

### C.   The Lori Ellis Agendas/Communications Regarding Project Falcon

Stemberger further testified that Lori Ellis, his Peraton superior, instructed him to identify two candidates for termination. App. 010.[31] Stemberger testified that he identified Plaintiff for termination on June 1, 2021.[32] On June 3, 2021, after Plaintiff was already chosen for termination, Lori Ellis was instructed to complete the 'Skills Matrix Template' "to show that the individuals selected for separation were selected based on non-discriminatory factors" in order to comply with the OWBPA. App. 026-028.[33] "The Skills Matrix Template" lays out a number of

---

[28] See Exhibit 1 to Appendix in Support of this Motion, pg. 105: lines 1-9.
[29] Id at pg. 37: lines 21-24.
[30] See Exhibit 6 to Appendix in Support of this Motion.
[31] See Exhibit 1 to Appendix in Support of this Motion pg. 38: lines 4-9.
[32] Id at pg. 37: lines 21-24.
[33] See Exhibit 6 to Appendix in Support of this Motion.

performance categories with an option to give a rating score out of 20.[34] Stemberger testified that he did not complete this "Skills Matrix Template" and testified that he did not know who completed it. App. 014.[35] Stemberger further testified that the "Skills Matrix Template" was populated after he had already made the decision to terminate Plaintiff.[36] Plaintiff contends that it was only filled out to disguise the true reason for Miramontes' termination: his age and/or race.

Additionally, it became known on January 25, 2023 that Defendant is currently withholding five emails between Capalbo, Ellis, and Wanda Parker regarding Project Falcon under the assertion of attorney-client privilege and/or the work product doctrine. App. 029-031.[37] Plaintiff asserts there is no such privilege applicable which would deprive Plaintiff of these documents. Such documents should be reviewed by the Court in camera and if the Court's review determines the documents are discoverable, Defendant should be ordered to produce same.

Despite the U. S. Magistrate's granting of Plaintiff's Motion to Compel (Doc. 50), the Defendant has produced no emails between Lori Ellis, Stemberger or anyone else transferring the "Skills Matrix Template" back and forth or establishing who completed the ratings on Plaintiff contained therein. Further no agendas of Project Falcon meeting have been produced. Defendant simply asserts that they have been lost, or at least "not found."

### D. Defendant's duty to preserve the evidence.

In *Knight*, this Court noted that "[a] duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Knight, supra* at 76.

---

[34] Id.
[35] See Exhibit 1 pg. 104: lines 2-25 and pg. 105: lines 1-2.
[36] *Id.*
[37] See Exhibit 7 to Appendix in Support of this Motion, last page.

This Court further notes in *Knight*: "Once litigation is reasonably anticipated, a potential party to that litigation 'must not destroy unique, relevant evidence that might be useful to an adversary." *Knight, supra at* 76. "The duty to preserve extends to the party's or potential party's employees "likely to have relevant information—the 'key players.'" *Id.* The duty to preserve evidence is a duty owed to the *court*, not to the party's potential adversary, hence, spoliation is considered an abuse of the judicial process. *Victor Stanley, 269 F.R.D. at 525-26. Knight supra at* 76-7.

In this case, Peraton understood future litigation was possible on July 1, 2021, the date it terminated Mr. Miramontes, because Peraton attempted to have Plaintiff sign a separation agreement with many provisions attempting to limit and/or restrict his rights to pursue litigation against Peraton.[38] Peraton internally sent out the "Skills Matrix Template" for the express purpose of stating non-discriminatory reasons for the termination. App. 026-028.[39] Interestingly, the "Skills Matrix Template" was sent out on June 3, 2021, two days after the decision to terminate Mr. Miramontes was already made. It was an *ex post facto* effort to "justify" the termination based on non-discriminatory reasons.[40] Further, in the separation agreement drafted by Peraton and presented to Mr. Miramontes on the date of termination, Peraton referenced non-discriminatory statutes - affirming its conscious regard for the possibility of litigation.[41]

Furthermore, litigation was clearly foreseeable on June 4, 2021 when the "Skills Matrix Template" was sent to Lori Ellis for completion and sought to find non-discriminatory reasons to

---

[38] See Exhibit 15 of Appendix in Support of Plaintiff's Motion for Abatement and/or Leave to Resolve Outstanding Discovery Issues and Motion Requesting Time to Reply (Document # 56).
[39] See Exhibit 6 to Appendix in Support of this Motion.
[40] Id.
[41] See Exhibit 15 of Appendix in Support of Plaintiff's Motion for Abatement and/or Leave to Resolve Outstanding Discovery Issues and Motion Requesting Time to Reply (Document # 56).

justify termination. App. 026-028.[42] Who filled them out? What factors were used? The evidence is lost according to Defendant. At the very least, the day Mr. Stemberger viewed the Demand Letter (July 13, 2021) certainly placed a duty on him to preserve evidence. The duty to preserve existed and was violated.

Lastly, Defendant has, in Plaintiff's belief, wrongly asserted the Attorney Work Product privilege on its Privilege Log in order to deprive Plaintiff of emails dated as early as May 28, 2021. App. 029-031.[43] This is an admission by Defendant that it knew litigation was foreseeable as early as May 28, 2021.

### E.   Defendant's bad faith.

Peraton's and Stemberger's "failure to preserve key messages" rise to the level of bad faith. They have known litigation was likely on various dates beginning at least on May 28, 2021. They knew they had to overcome age and racial discrimination claims and they attempted to create a document (the "Skills Matrix Template") designed to provide "legal" justification for their conduct. There is a fact question of whether this was all a pretext and the emails and texts that are being hidden or destroyed would speak directly to those issues. This is evidence that the Defendant "purposefully, over a sustained period of time, engaged in a concerted effort to hide and destroy evidence." *Knight, supra at* 84.

Furthermore, as stated by Plaintiff in prior pleadings with this Court, Defendant has engaged in a pattern of hiding evidence. As previously stated in Plaintiff's Motion to Abate (Document #53), additional significant documents were not produced by Defendant until *after* Defendant filed its Motion for Summary Judgment in this case. In fact, documents are still being produced by Defendant.

---

[42] See Exhibit 6 to Appendix in Support of this Motion.
[43] See Exhibit 7 to Appendix in Support of this Motion.

### F.  Prejudice.

The question before the Court is also set out in Knight: "whether Defendant's bad faith actions 'materially 'compromised' Plaintiff's ability to present [his] case.'" *Id. at* 85. Without access to current communications between Capalbo and Stemberger pre-termination, during termination, post termination and ON THE DAY OF receipt of the Demand Letter, Plaintiff is without evidence that would demonstrate pretext. Without the actual documents establishing the roll-out of the alleged "Project Falcon" Plaintiff is without the evidence that the Project was just a pretext. By being deprived of direct evidence that could support pretext (direct communications by the "players" at Peraton) - Plaintiff is now forced to rely on indirect evidence or inference. "[A]n essential fact for recovery is severely curtailed. *Id. at* 86. The evidence that has been produced by Defendant reveals whispers of discrimination.  Plaintiff still does not know who graded him on the "Skills Matrix Template" the very document Peraton purported to use to identify the employees it sought to terminate.  Plaintiff believes that text messages between Capalbo and Stemberger regarding Plaintiff would have revealed that Peraton decided to select him for termination because of his age and/or race.  Without this direct evidence, which was destroyed or is being hidden, it is now less likely that Plaintiff will be able to prove pretext. *Id.* The lost or destroyed evidence is also circumstantial. "Plaintiff and this Court will never know the precise content of the deleted communications." *Id.*

### III.  REQUESTED RELIEF

This Court established that the proper sanction for such action is the one that best (1) deters parties from future spoliation, (2) places the risk of an erroneous judgment on the spoliating party, and (3) restores the innocent party to their rightful litigation position. *See Victor Stanley, 269 F.R.D. at 533-34.* See, *Knight, supra* at 89. This requires removing the evidentiary

obstacles caused by the spoliation. If not for Defendant's conduct, the Plaintiff would have direct evidence that Plaintiff's termination was a pretext. The loss or destruction of such evidence prohibits Plaintiff from showing the bad faith attempts of the Defendant to hide evidence and of the pretext itself. The most appropriate remedy to deter spoliation is a finding of liability based on discriminatory practices. The Court should strike the Defendant's pleadings and defenses as to liability. This would include liability under discriminatory claims and/or under contract. This would also place the risk of an erroneous judgment on the spoliating party and restore the Plaintiff to his rightful litigation position. The Defendant would be able to defend itself on the amount of damages and whether punitive damages should be awarded. In the alternative, Plaintiff prays for any relief the Court deems just and right in these circumstances. Plaintiff also requests that this Court conduct an in camera review of the five May 28, 2021 emails identified as privileged on Defendant's Amended Privilege Log.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that after notice, the Court grant this Motion in all things and award the Plaintiff its costs and attorney's fees. Plaintiff prays for general relief.

Respectfully submitted,

*/s/ Joseph E. Ackels, Sr.*
Joseph E. Ackels, Sr.
State Bar No. 00829980
joe@ackelslaw.com
Joseph E. Ackels, Jr.
State Bar No. 24097274
joe-jr@ackelslaw.com
ACKELS & ACKELS, L.L.P.
3030 LBJ Freeway, Suite 1550
Dallas, Texas 75234
Tel: (214)-267-8600
Fax: (214)-267-8605
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF CONFERENCE

I certify that I have communicated with Jeremy Hawpe, the attorney of record for the Defendant on January 27, 2023 and January 31, 2023 and he indicated that he was opposed to this Motion.

/s/ *Joseph E. Ackels, Sr.*
Joseph E. Ackels, Sr.

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Jeremy W. Hawpe
Texas State Bar No. 24046041
jhawpe@littler.com
Shelby Taylor
Texas State Bar No. 24110432
sktaylor@littler.com

LITTLER MENDELSON, P.C.
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX  75201-2931
214.880.8100 (Telephone)
214.880.0181 (Facsimile)
ATTORNEYS FOR DEFENDANT

/s/ *Joseph E. Ackels, Sr.*
Joseph E. Ackels, Sr.