**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **CARLOS MIRAMONTES**<br>    **Plaintiff,** | §<br>§<br>§ |
| **vs.** | §    **CIVIL ACTION NO. 3:21-CV-3019-B** |
| | §<br>§ |
| **PERATON, INC.,**<br>    **Defendant.** | §<br>§ |

**PLAINTIFF'S SUR-REPLY AND BRIEF TO DEFENDANT'S REPLY TO PLAINTIFF'S
RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, Carlos Miramontes, Plaintiff and files this Sur-Reply and Brief to Defendant's Reply to Plaintiff's Response to Defendant Peraton, Inc.'s Motion for Summary Judgment and in support thereof would show the Court as follows:

The exhibits applicable to the arguments made in this Sur-Reply can be found in Plaintiff's Appendix In Support of this Sur-Reply which are incorporated herein by reference for all purposes.

### I. OVERVIEW

Discovery closed on October 31, 2022. On November 3, 2022, Plaintiff filed his Motion for Leave to File a Motion to Compel (Doc. 25). While this Motion was pending, Defendant filed its Motion for Summary Judgment on November 10, 2022 (Doc. 30) Magistrate Rutherford granted the Motion for Leave and the Motion to Compel (Doc. 50), ordering Defendant to produce additional documents by December 30, 2022.  After that production, Magistrate Rutherford (after further hearing) ordered Defendant to make additional discovery production by March 31, 2023 (Doc. 73).

Subsequent to the discovery cutoff and the filing of Defendant's Motion for Summary Judgment, On its own and in accordance with Magistrate Rutherford's rulings, Defendant produced additional documents and information on November 21, 2022, December 29, 2022, January 26, 2023, February 9, 2023, and March 31, 2023.

Plaintiff files this Sur-Reply and Brief in order to include in the summary judgment record the newly produced evidence which offers additional support for Plaintiff's contentions in his Response to Defendant's Motion for Summary Judgment.

## II.  ADDITIONAL EVIDENCE PRODUCED BY DEFENDANT

**A.**     **November 21, 2022 Production by Defendant**

**1**. **"PERATON (MIRAMONTES) 1705"**

This document is an internal Peraton email dated June 28, 2021 (three days before Plaintiff was terminated).  This email states that "we received approval over the weekend, so please find the ROC information attached for the group of employees exiting on 7/1 and 7/6." App. 001.[1]  The email attaches an Excel spreadsheet Bates Labeled **"PERATON (MIRAMONTES) 1706."**  App. 002-003.[2]  This Excel spreadsheet lists 23 employees targeted for termination.  Of the 23 employees listed, 19 of them are over the age of 40 or about 83%, only 4 of them are under the age of 40.

---

[1] A true and correct copy of "PERATON (MIRAMONTES) 1705" is attached to Plaintiff's Appendix in support of this Motion as Exhibit 1.
[2] A true and correct copy of "PERATON (MIRAMONTES) 1706" is attached to Plaintiff's Appendix in support of this Motion as Exhibit 2.

**2. "PERATON (MIRAMONTES) 1739"**

This is a June 10, 2021 version of the Talent Selection Template (aka Skills Matrix Template) which identifies 29 employees selected for termination. Only 7 of the 29 employees have unredacted demographic information. App. 004-007.[3]

**B.    December 29, 2022 Production by Defendant**

**1. "PERATON (MIRAMONTES) 1821"**

This document is a Lori Ellis (Supervisor of Victor Stemberger) email dated June 5, 2021 wherein she states the importance of the Skills Matrix Template. This email establishes that the Skills Matrix Template is supposed to be the tool used to identify the individuals who are underperforming and who will therefore be selected for termination through "Project Falcon." Ms. Ellis states in this email that they must "…ensure our planning is in sync with the results of the assessments." App. 008.[4]

**2. "PERATON (MIRAMONTES) 1944"**

This is an April 26, 2021 email between Victor Stemberger and Joe Capalbo wherein Mr. Stemberger lists Plaintiff as an employee who is scheduled to be "termed out." App. 009.[5] This establishes that although Mr. Stemberger testified in his deposition that the decision to terminate Plaintiff was made on June 1, 2021, the decision had in fact been made before that date, on April 26, 2021. App. 051.[6]

---

[3] A true and correct copy of "PERATON (MIRAMONTES) 1739" is attached to Plaintiff's Appendix in support of this Motion as Exhibit 3.
[4] A true and correct copy of "PERATON (MIRAMONTES) 1821" is attached to Plaintiff's Appendix in support of this Motion as Exhibit 4.
[5] A true and correct copy of "PERATON (MIRAMONTES) 1944" is attached to Plaintiff's Appendix in support of this Motion as Exhibit 5.
[6] A true and correct copy of the excerpt from the deposition of Victor Stemberger is attached hereto as Exhibit 16: p. 37 lines 21-24.

### 3. "PERATON (MIRAMONTES) 1958"

This document is a June 4, 2021 chat log between Victor Stemberger and another Peraton employee, Sanjeev Udhnani. App. 010.[7] In this chat log, Mr. Udhnani is asking Mr. Stemberger to complete the Skills Matrix Template for Plaintiff. This establishes that while Stemberger identified Plaintiff for termination on at least April 26, 2021, he did not use the Skills Matrix Template to do so because it was not even complete as of June 4, 2021.

### 4. "PERATON (MIRAMONTES) 2043"

This is an email from Lori Ellis dated June 3, 2021. In this email, Ms. Ellis notes that she has "…taken a cut at the hPeraton personnel included on this list leveraging previous evaluations and language that has passed previous reviews." App. 011[8] She attaches a filled in Skills Matrix Template that grades Plaintiff with below average performance scores. This Skills Matrix Template is then sent to Victor Stemberger for the first time based on information and belief available to Plaintiff. App. 011.[9] The Skills Matrix Template sent to Stemberger, is attached as **"PERATON (MIRAMONTES) 2045."** This document is a snapshot of the tab entitled "EX1106" of the Skills Matrix Template aka the Talent Selection Template, which reveals that at the time this Template was sent to Mr. Stemberger, the performance evaluation of Plaintiff had already been filled out and completed. App. 012.[10] This suggests that Ms. Ellis is the one who graded Plaintiff's performance and entered the scores on the Skills Matrix Template. If true, then that means Lori Ellis, someone who has no knowledge of Plaintiff's performance, arbitrarily

---

[7] A true and correct copy of "PERATON (MIRAMONTES) 1958" is attached to Plaintiff's Appendix in support of this Motion as Exhibit 6.
[8] A true and correct copy of "PERATON (MIRAMONTES) 2043" is attached to Plaintiff's Appendix in support of this Motion as Exhibit 7.
[9] A true and correct copy of "PERATON (MIRAMONTES) 2043" is attached to Plaintiff's Appendix in support of this Motion as Exhibit 7.
[10] A true and correct copy of the tab entitled "EX1106" of "PERATON (MIRAMONTES) 2045" is attached to Plaintiff's Appendix in support of this Motion as Exhibit 8.

graded Plaintiff's performance to justify his selection for termination after he had already been selected.  It has already been established that Stemberger did not complete this grading for Plaintiff, so this document begs the question. App. 050.[11]  Ms. Ellis' assertion that she used previous evaluations to complete the performance rating for Plaintiff cannot be true because had she reviewed the two most recent evaluations of Plaintiff the only conclusion that she could have drawn was that he was a valued employee. App. 029[12] and App. 036.[13]  In fact, the rating she appears to have given Plaintiff is false based on the evidence produced in this case. As a result, there is a fact question not only regarding who ultimately rated Plaintiff's performance, but also as to whether or not this effort was a pretext to hide discrimination.

### 5. "PERATON (MIRAMONTES) 2046"

This document is an email dated July 6, 2021, five days after Plaintiff was terminated. Mr. Stemberger writes that he "executed [his] sole Project Falcon impact on July 1st.  Spoke to my team and am now finalizing my new org.  This includes on-boarding Dana…." App. 013.[14] This email establishes that five days after terminating Plaintiff, Mr. Stemberger replaced him with Dana Campbell.  This documentary evidence directly contradicts Defendant's sworn interrogatory answer that "Plaintiff was not replaced." App. 052-062.[15]  Additionally, this directly contradicts Mr. Stemberger's testimony that Mr. Campbell did not become a part of his

---

[11] A true and correct copy of the excerpt from the deposition of Victor Stemberger is attached hereto as Exhibit 16: p. 105: lines 1-13.
[12] A true and correct copy of "PERATON (MIRAMONTES) 2058" is attached to Plaintiff's Appendix in support of this Motion as Exhibit 11.
[13] A true and correct copy of "PERATON (MIRAMONTES) 2077" is attached to Plaintiff's Appendix in support of this Motion as Exhibit 12.
[14] A true and correct copy of "PERATON (MIRAMONTES) 2046" is attached to Plaintiff's Appendix in support of this Motion as Exhibit 9.
[15] A true and correct copy of Defendant's Response to Plaintiff's First Set of Interrogatories is attached to Plaintiff's Appendix in support of this Motion as Exhibit 16 (see Interrogatory No. 20).

team until December 2021. App. 047.[16] This certainly raises a fact question as to whether Plaintiff was replaced by a white mail, under forty years of age.

**C.     January 26, 2023 Production by Defendant**

### 1. "PERATON (MIRAMONTES) 2052"

Defendant produces the Fact Pack and Org Design Tool dated May 21, 2021. App.014-028.[17] This Excel spreadsheet reveals for the first time that 55 individuals who worked in the same department as Plaintiff (Procurement) were selected for termination under Project Falcon. Previously, Defendant had only provided documents revealing that 23 employees were identified for termination.[18] Now it has been revealed through this document that at least 55 employees were selected for termination as part of Project Falcon. At the time this document was produced, no demographic information about these employees selected for termination had been provided by the defense.

**D.     February 9, 2023 Production by Defendant**

### 1. "PERATON (MIRAMONTES) 2058-2064"

Defendant for the very first time produces the glowing evaluations of Plaintiff dated April 1, 2020 – March 31, 2021. App. 029-035.[19] Had Plaintiff not had this information printed out and in his own custody this document may never have been produced by Defendant. Plaintiff originally requested production of this evaluation on February 1, 2022. It was not produced by Defendant until February 9, 2023, over a year later (after multiple orders from Magistrate Rutherford. This evaluation, of course, flies in the face of the contentions brought by

---

[16] A true and correct copy of the excerpt from the deposition of Victor Stemberger is attached hereto as Exhibit 16: p. 43: lines 12-23.

[17] A true and correct copy of "PERATON (MIRAMONTES) 2052" is attached to Plaintiff's Appendix in support of this Motion as Exhibit 10.

[18] See App. 002-003.

[19] A true and correct copy of "PERATON (MIRAMONTES) 2058-2064" is attached to Plaintiff's Appendix in support of this Motion as Exhibit 11.

Defendant that Plaintiff was an underperformer. This evaluation directly contradicts Defendant's position that Plaintiff was selected for termination because of performance issues. Had Plaintiff not kept a copy of this evaluation it likely would have been kept from him in this discovery process, like many of the other documents Defendant has withheld and is likely currently withholding. These evaluations certainly raise a fact question as to whether Plaintiff's termination was based upon a pretext.

### 2. "PERATON (MIRAMONTES) 2077-2080"

Defendant finally, for the first time, produced Plaintiff's glowing evaluation from April 1, 2019 – March 31, 2020. App. 036-039.[20] This evaluation repeats the same story about Plaintiff's performance: he was a hard-working employee who held the utmost respect of his managers. It took Defendant over a year to produce this evaluation because it flies directly in the face of their contentions in this case that Plaintiff's performance was lacking.

### 3. "PERATON (MIRAMONTES) 2099"

This is an email from Lori Ellis to Victor Stemberger sent on July 6, 2021, five days after Plaintiff was terminated. App. 040.[21] It is not surprising that Defendant has refused to produce this document until February 9, 2023. It is not surprising because this email reveals that Dana Campbell replaced Plaintiff and started to directly report to Victor Stemberger on July 6, 2021. This is another contradiction of Victor Stemberger's testimony in his deposition that Dana Campbell did not become his direct report until December 2021. App. 048.[22] Defendant has

---

[20] A true and correct copy of "PERATON (MIRAMONTES) 2077-3080" is attached to Plaintiff's Appendix in support of this Motion as Exhibit 12.
[21] A true and correct copy of "PERATON (MIRAMONTES) 2099" is attached to Plaintiff's Appendix in support of this Motion as Exhibit 13.
[22] A true and correct copy of the excerpt from the deposition of Victor Stemberger is attached hereto as Exhibit 16: p. 115: lines 21-24.

kept this email hidden from Plaintiff and did not produce it until after it filed its Summary Judgment and after Plaintiff's deadline to respond to same expired.

### E.      March 31, 2023 Interrogatory Response by Defendant

Pursuant to Magistrate Rutherford's Order (Doc. 73),  by On March 31, 2023 Defendant was to provide the demographic information of the 55 individuals in the procurement department that were identified for termination on "PERATON (MIRAMONTES) 2052" (which was produced on January 26, 2023).  App. 041-046.[23]  As suspected, the demographic information finally produced by Defendant revealed that the vast majority of those selected for termination under Project Falcon (83%) were over the age of 40. This number (83%) is consistent with the 83% of over forty previously found at **"PERATON (MIRAMONTES) 1706."**  App. 002-003.[24] That Excel spreadsheet listed 23 employees targeted for termination.  Of the 23 employees listed 19, or 83%, were targeted for termination. This demonstrates a clear pattern of terminating older employees on a consistent basis. Project Falcon had zeroed in on the older employees at an alarming rate.

### III.  ARGUMENTS

All of this evidence, produced after Defendant filed its Motion for Summary Judgment, establishes the following:

1. Defendant did not produce crucial evidence that supports Plaintiff's contentions in this lawsuit until after Plaintiff's time to respond to Defendant's Motion for Summary Judgment had expired.

---

[23] A true and correct copy of Defendant's Answers and Objections to Plaintiff's Second Set of Interrogatories is attached to Plaintiff's Appendix in support of this Motion as Exhibit 14.
[24] A true and correct copy of "PERATON (MIRAMONTES) 1706" is attached to Plaintiff's Appendix in support of this Motion as Exhibit 2.

2. The vast majority (83%) of the 55 employees terminated under Project Falcon in the same year as Plaintiff, were over the age of 40, which supports the existence of a fact issue on whether the purported basis for Plaintiff's selection for termination was a pretext.

3. The Skills Matrix Template could have been completed by Lori Ellis, who had no personal knowledge of Plaintiff's performance, and the template was completed after Plaintiff was selected for termination. This evidence creates a question of fact with regard to whether Plaintiff's selection for termination was a pretext.

4. Plaintiff had glowing reviews up to March 31, 2021. This also supports the question of fact as to whether the stated termination basis was a pretext.

5. Dana Campbell replaced Plaintiff on July 6, 2021. This provides evidence that Plaintiff was replaced by Dana Campbell, a white male under the age of 40 – a fact denied many times and under oath by the defense.

6. This newly obtained evidence supports the following elements as briefed previously:

    i. Plaintiff was qualified for his position.

    ii. Plaintiff was replaced by Dana Campbell, a white male under the age of 40.

    iii. Plaintiff's age was a motivating factor in his termination because Defendant's reasons for his termination were false and were a pretext for discrimination.

    iv. Even if, Defendant's reasons were true, another motivating factor was Plaintiff's age.

### IV. CONCLUSION

Based on the foregoing, Plaintiff reasserts that there are genuine issues of material fact in each and every claim asserted by Plaintiff against Defendant. As a result, Plaintiff requests that

this Court deny Defendant's Motion for Summary Judgment in its entirety.

Dated April 10, 2023

>Respectfully submitted,
>
>*/s/ Joseph E. Ackels, Sr.*
>Joseph E. Ackels, Sr.
>State Bar No. 00829980
>joe@ackelslaw.com
>Joseph E. Ackels, Jr.
>State Bar No. 24097274
>joe-jr@ackelslaw.com
>ACKELS & ACKELS, L.L.P.
>3030 LBJ Freeway, Suite 1550
>Dallas, Texas 75234
>Tel: (214)-267-8600
>Fax: (214)-267-8605
>Attorneys for Plaintiff

### CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Jeremy W. Hawpe
Texas State Bar No. 24046041
jhawpe@littler.com

LITTLER MENDELSON, P.C.
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX  75201-2931
214.880.8100 (Telephone)
214.880.0181 (Facsimile)
ATTORNEYS FOR DEFENDANT

>*/s/ Joseph E. Ackels, Sr.*
>Joseph E. Ackels, Sr.