UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CARLOS MIRAMONTES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-3019-B |
| | § | |
| PERATON, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Carlos Miramontes's Motion for Sanctions for Spoliation of Evidence (Doc. 62). Miramontes claims Defendant Peraton, Inc. should be sanctioned for (1) failing to preserve text messages between its employees Joe Capalbo and Victor Stemberger and (2) failing to produce certain emails and agendas related to Miramontes's selection for termination. As a sanction, Miramontes requests a finding of liability as to discrimination. Because the Court finds a lesser sanction is appropriate, the Court **GRANTS in part** the Motion for Sanctions (Doc. 62).

As sanctions, the Court **DENIES** Peraton's Motion for Summary Judgment (Doc. 30) and permits Miramontes to serve five additional interrogatories and three additional requests for production. Miramontes's Motion to Strike Defendant's Summary Judgment Evidence (Doc. 37) is **DENIED AS MOOT**.

- 1 -

# I.

# BACKGROUND

A.    *Factual Background of the Case*

This is an employment discrimination case. "[Peraton] is a technology company that specializes in space, intelligence, cybersecurity, defense, homeland security, and health." Doc. 32, Def.'s Mot. Summ. J. App., 12. The parties' relationship began in May 2021, when Peraton acquired Perspecta, Inc. *See id.* at 13. Miramontes had worked for Perspecta and its predecessors for over twenty-seven years. Doc. 41, Pl.'s Summ. J. Resp. App., 114. At the time of the acquisition, Miramontes was working as a "Senior Supply Chain Business Partner Manager" at Perspecta, a role also referred to as "Program Manager." Doc. 32, Def.'s Summ. J. App., 13. His manager at the time, Joseph Capalbo, gave him a positive performance review for the year leading up to the merger. *See* Doc. 41, Pl.'s Summ. J. App., 1–7.

As part of the acquisition process, all Perspecta employees were presented with a welcome letter and a proposed employment agreement titled "Employee Letter of Understanding" (the "Letter of Understanding"). Doc. 32, Def.'s Summ. J. App., 2. Peraton sent Miramontes these documents, and he signed the Letter of Understanding on May 6, 2021, officially becoming a Peraton employee. *Id.* at 1; *see* Doc. 41, Pl.'s Summ. J. App., 12–17. As the companies executed the merger, Peraton decided to absorb Miramontes's duties into existing positions and eliminate his position. Doc. 32, Def.'s Summ. J. App., 14. Miramontes was moved to a new role as a "Category Manager." *Id.*

Miramontes's employment at Peraton was short-lived. Shortly after acquiring Perspecta, Peraton began a series of layoffs internally referred to as "Project Falcon." *Id.* at 2. Miramontes was terminated on July 1, 2021, as part of the first round of layoffs. *Id.*; Doc. 41, Pl.'s Summ. J. App., 117.

Miramontes's supervisor notified him that he was being terminated via a Zoom call. Doc. 41, Pl.'s Summ. J. App., 117. In that conversation, his supervisor unilaterally brought up Miramontes's age, telling him twice, without prompting, that he was not being terminated because of his age. *Id.*

The parties dispute the reason for Project Falcon and the method used to select employees for termination. Peraton asserts Project Falcon was a company-wide reduction in force made necessary by budgetary constraints after the merger. *See* Doc. 32, Def.'s Summ. J. App., 2, 15. Miramontes contends Project Falcon was a "sham" created to disguise Peraton's real reasons for terminating the affected employees: discrimination based on their age and/or race. Doc. 40, Pl.'s Summ. J. Resp. Br., 23–24.

Miramontes sued Peraton in state court on November 3, 2021, bringing claims for breach of contract; negligent misrepresentation; declaratory judgment; fraud; violations of the Deceptive Trade Practices Act; and race, color, and age discrimination in violation of Chapter 21 of the Texas Labor Code. Doc. 2-1, Original Pet., ¶¶ 6.1–6.22. Peraton removed to this Court on December 3, 2021. Doc. 1, Notice Removal.

On November 11, 2022, Peraton moved for summary judgment. *See* Doc. 30, Def.'s Mot. Summ. J. Among other things, Peraton argued Miramontes failed to show Peraton's nondiscriminatory reason for terminating him was pretext for discrimination. *See* Doc 31, Def.'s Mot. Summ. J. Br., 13–17. Thus, Peraton continued, it was entitled to summary judgment on Miramontes's discrimination claims. *Id.* Miramontes filed an Objection to and Motion to Strike Defendant's Summary Judgment Evidence (Doc. 37) contemporaneously with his Summary

Judgment Response (Doc. 39). On February 6, 2023, Miramontes filed his Motion for Sanctions (Doc. 62).

B.    *Factual Background of the Motion*

Miramontes sent Peraton a litigation hold letter in July 2021. *See* Doc. 63, Pl.'s Sanctions App., 20–23. In the letter, Miramontes placed Peraton on notice to preserve all documents regarding his claims, "includ[ing] information, data, emails, texts, attachments, and any other method or means of communications, internally and/or externally." *Id.* at 22. He instructed Peraton not to allow deletion of these documents. *Id.* Peraton directed Miramontes's direct supervisor, Victor Stemberger, to preserve emails relating to Miramontes's claims but did not mention text messages. *Id.* at 3, 7–8.

At his deposition, Stemberger testified that he texted his supervisor, Joseph Capalbo, about Miramontes "[o]nce or twice." Doc. 69, Def.'s Sanctions Resp. App., 4. Stemberger used his personal cell phone. *See* Doc. 63, Pl.'s Sanctions App., 3. He stated that he received a litigation hold letter from Miramontes and texted Capalbo, "Have you seen this?" *Id.* at 2. Stemberger added that he read only the first paragraph of the hold letter and was unaware of any duty to preserve his text messages. *Id.* at 5, 7. Stemberger stated he "d[id not] distinctly remember" the subject matter of the second text. Doc. 69, Def.'s Sanctions App., 4. He explained, "[T]here were two objectives of the text messages. First and foremost, 'I received this notice.' Secondarily, 'Can you make sure that [Peraton's Chief Legal Officer] Jim Winner sees this?'" *Id.*; *see also* Doc. 41, Pl.'s Summ. J. App., 19. Stemberger explained he could not produce the messages because he had deleted them. *See* Doc. 63, Pl.'s Sanctions App., 2. He claimed he deletes all his text messages within forty-eight hours. *Id.*

Miramontes also discusses another document in his Sanctions Motion. Peraton produced a document called the "Skills Matrix Template," which indicates Miramontes was not performing well in his role at Peraton. *Id.* at 26–28. Miramontes seeks sanctions because Peraton has not produced evidence of who filled out the form and what factors were used. *See* Doc. 62, Pl.'s Mot. Sanctions, 7–9. Although Miramontes does not identify specific documents that contain this information, he argues that this evidence must exist. *See id.* at 9.

The Court held a hearing on the Motion on May 19, 2023. After hearing the evidence and arguments presented at the hearing, the Court issued its ruling. This ruling is further explained below.

## II.

## LEGAL STANDARD

A federal court has the inherent power to sanction a party who has abused the judicial process. *Chambers v. NASCO,* 501 U.S. 32, 44–45 (1991). The spoliation of evidence is one such abuse. *Rimkus Consulting Grp., Inc. v. Cammarata,* 688 F. Supp. 2d 598, 611 (S.D. Tex. 2010). "Spoliation is the 'destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 799 (N.D. Tex. 2011) (Boyle, J.) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). "If a party *intentionally* destroys evidence, the trial court may exercise its discretion to impose sanctions on the responsible party." *Coastal Bridge Co., v. Heatec, Inc.,* 833 F. App'x 565, 573 (5th Cir. 2020) (per curiam).

For a court to find spoliation, "(1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith." *Id.* at 574. Additionally, courts have also generally required a showing of "prejudice" to the moving party before imposing sanctions. *See Ashton*, 772 F. Supp. 2d at 800.[1]

When imposing sanctions for spoliation, courts have broad discretion in crafting a remedy that is proportionate to both the culpable conduct of the spoliating party and resulting prejudice to the innocent party. *Anadarko Petrol. Corp. v. Davis,* 2006 WL 3837518, at *27 (S.D. Tex. Dec. 28, 2006). Available sanctions include awarding attorneys' fees, deeming certain facts admitted, giving an adverse inference instruction to the jury, striking pleadings, entering a default judgment, and dismissing the case entirely. *Rimkus,* 688 F. Supp. 2d at 618–19; *Duque v. Werner Enters., Inc.,* 2007 WL 998156, at *2–3 (S.D. Tex. Mar. 30, 2007).

In choosing the appropriate remedy, courts consider

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

---

[1] Alternatively, some courts have required the moving party to show the "relevan[ce]" of the destroyed evidence. *See, e.g.*, *Coastal Bridge*, 833 F. App'x at 573. As courts have recognized, these showings of "prejudice" and "relevance" significantly overlap. S*ee, e.g.*, *Rimkus,* 688 F. Supp. 2d at 615–16. Indeed, these inquiries are two sides of the same coin. If evidence is *relevant* to a party's claims or defenses, the party will be *prejudiced* by its destruction. If the evidence irrelevant, the party will not. Thus, although this Court uses the label "prejudice," *see, e.g.*, *360 Sec. Partners, LLC v. Hammond*, 2023 WL 1869633, at *4 (N.D. Tex. Feb. 9, 2023) (Boyle, J.), it has recognized that "satisfy[ing] the prejudice requirement [requires] . . . demonstrat[ing] that the missing or altered evidence would have been relevant to its case," *see id.*

*Coastal Bridge*, 833 F. App'x at 573. The chosen sanction "should (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Ashton*, 772 F. Supp. 2d at 801 (internal quotations omitted).

But in selecting a sanction, the court must ensure that it is "no harsher than necessary to respond to the need to punish or deter and to address the impact on discovery." *Rimkus*, 688 F. Supp. 2d at 618. The sanction of striking pleadings and defenses to liability is appropriate when the spoliating conduct is "egregious." *See Ashton*, 772 F. Supp. 2d at 805 ("Parties tempted to engage in such egregious conduct will be on notice that doing so will forfeit their right to contest liability.").

## III.

## ANALYSIS

Miramontes argues Peraton had a duty to preserve the text messages between Capalbo and Stemberger and any information regarding the completion of the Skills Matrix. Doc. 62, Mot. Sanctions, 3–9. He asserts these pieces of evidence, especially the text messages, "would have revealed that Peraton decided to select [Miramontes] for termination because of his age and/or race." *Id.* at 10. As a sanction, he asks the Court to find "liability based on discriminatory practices." *Id.* at 11.

Peraton argues Miramontes has not established any of the elements of a spoliation finding. First, Peraton contends it did not have a duty to preserve the text messages because the messages were on Stemberger's personal phone. *See* Doc. 68, Def.'s Sanctions Resp. Br., 5–6. Second, Peraton argues the deletion of the text messages does not prejudice Miramontes. *Id.* at 8–11. And finally,

Peraton maintains the text messages were not destroyed in bad faith. *Id.* at 11–12. As explained below, the Court disagrees.

A.    *The Deletion of the Text Messages on Stemberger's Phone Constitutes Spoliation by Peraton*

      1.    <u>Peraton Controlled the Text Messages and Had a Duty Preserve Them</u>

For a court to find spoliation, "the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction." *Coastal Bridge,* 833 F. App'x at 574. Peraton argues it did not have a duty to preserve the text messages on Stemberger's phone because it did not have possession, custody, or control of these messages. Doc. 68, Def.'s Sanctions Resp. Br., 5–6. The Court disagrees.

There is little caselaw regarding when a party controls evidence for purposes of spoliation. The Court finds persuasive caselaw addressing control in the related context of Federal Rule of Civil Procedure 34. As courts have noted in the context of Rule 34, "[t]he concept of 'control' . . . is often highly fact-specific." *Benson v. Rosenthal*, 2016 WL 1046126, at *4 (E.D. La. Mar. 16, 2016) (quoting 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2210 (3d ed. 2016)). When considering whether an employer has "control" over communications on its employees' personal devices, courts have considered several factors. These include (1) whether the employer issued the devices, (2) how frequently the devices were used for business purposes, (3) whether the employer had a legal right to obtain communications from the devices, and (4) whether company policies address access to communications on personal devices. *See, e.g.*, *Krishnan v. Cambia Health Sols., Inc.*, 2021 WL 3129940, at *2 (W.D. Wash. July 23, 2021) (collecting cases); *H.J. Heinz Co. v. Starr Surplus Lines Ins. Co.*, 2015 WL 12791338, at *4 (W.D. Pa. July 28, 2015), *report and recommendation adopted*, 2015 WL 12792025 (W.D. Pa. July 31, 2015). Courts have also suggested

that a company has "control" over business information on its employees' personal cell phones when the phones are routinely used for business purposes. *See, e.g.*, *Goolsby v. Cnty. of San Diego*, 2019 WL 3891128, at *4 (S.D. Cal. Aug. 19, 2019); *Union Home Mortg. Corp. v. Jenkins*, 2021 WL 1110440, at *10 (N.D. Ohio Mar. 23, 2021).

Peraton urges that an employer only has "control" over its employees' communications if it has a legal right to obtain them on demand. Doc. 68, Def.'s Sanctions Resp. Br., 5–6. While this bright-line test has intuitive appeal, the realities of modern business require a fact-specific approach. Today, many, if not most, employees use cell phones for work. And while some companies issue work devices, others, including Peraton, do not. Under Peraton's view, a company could effectively shield a significant amount of its employees' business communications from discovery simply by allowing its employees to conduct business on their personal phones. For these reasons, the Court agrees with other courts that have found electronically stored information on employees' personal devices may be under the control of their employer in certain circumstances. *See, e.g.*, *Alter v. Rocky Point Sch. Dist.*, 2014 WL 4966119, at *10 (E.D.N.Y. Sept. 30, 2014); *Union Home*, 2021 WL 1110440, at *10.

Here, the Court finds the text messages on Stemberger's phone were under Peraton's control. As Peraton emphasizes, the messages were on Stemberger's personal cell phone, not one provided by Peraton. However, here, the Court finds persuasive Miramontes's evidence that Peraton did not issue company cell phones and Peraton employees regularly conducted business on their cell phones. Under these circumstances, the Court finds Peraton had control over the text messages between Stemberger and Capalbo. *See, e.g.*, *Union Home*, 2021 WL 1110440, at *10.

Peraton also had a duty to preserve the text messages. "A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should

have known that the evidence may be relevant." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). "Once litigation is reasonably anticipated, a potential party to that litigation must not destroy unique, relevant evidence that might be useful to an adversary. The duty to preserve extends to the party's or potential party's employees likely to have relevant information—the key players." *Ashton*, 772 F. Supp. 2d at 800 (internal quotations and citations omitted).

The moving party bears the burden of showing the destroyed evidence was relevant. *Rimkus*, 688 F. Supp. 2d at 615–16. But without access to the destroyed evidence, this showing is often difficult to make. *Id.* at 616. Thus, "[c]ourts recognize that the burden placed on the moving party to show that the lost evidence would have been favorable to it ought not be too onerous, lest the spoliator be permitted to profit from its destruction." *Id.* (alteration and internal quotation omitted). Courts consider whether "the evidence in the case as a whole would allow a reasonable fact finder to conclude that the missing evidence would have helped the requesting party support its claims or defenses." *Id.* at 617.

Considering the evidence in the case as a whole, the Court finds a reasonable factfinder could conclude the missing text messages would have helped Miramontes support his discrimination claims. These text messages were sent immediately after Stemberger received the litigation hold letter from Miramontes. Doc. 63, Pl.'s Sanctions App., 2. Stemberger read portions of the litigation hold letter, although he claims he did not read the portion requiring the preservation of text messages. *Id.* at 2–6. The text messages were between the two people who could have completed the portion of the Skills Matrix that addressed why Miramontes was selected for termination. Doc. 32, Def.'s Summ. J. App., 44–45. Stemberger was the employee who suggested Peraton terminate Miramontes. *Id.* at 16. Capalbo gave Miramontes his positive performance review for the previous year. *See* Doc. 41, Pl.'s

Summ. J. App., 1–7. And Peraton had received notice that Miramontes would be suing Peraton. *Id.* at 110–13. In light of this circumstantial evidence, a reasonable factfinder could conclude the deleted messages were relevant to Miramontes's claims. And, because a reasonable factfinder could conclude these messages were relevant to Miramontes's case, he was prejudiced by their deletion.

 2. Peraton Is Liable for the Intentional Destruction of the Messages

The text messages were intentionally destroyed. In his deposition, Stemberger admitted he destroyed the messages intentionally. Doc. 63, Pl.'s Sanctions App., 2. "Standard principles of agency law govern the attribution of employees' spoliation to the company." *E.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 506 (E.D. Va. 2011). Employers are vicariously liable for actions their employees take within the course and scope of their employment. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018). Here, Stemberger's deleted text messages concerned his work at Peraton, Project Falcon, and Miramontes's allegations of discrimination. The Court concludes Stemberger was acting within the course and scope of his employment. Thus, Peraton can be held vicariously liable for Stemberger's intentional destruction of the text messages concerning Miramontes.

 3. Peraton Acted in Bad Faith

The Court further concludes the destruction was in bad faith. As noted above, "[b]ad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Guzman*, 804 F.3d at 713. "Typically, [courts] do not draw an inference of bad faith when documents are destroyed under a routine policy." *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007). However, a moving party has a stronger spoliation argument if he can prove the documents were destroyed after the alleged spoliating party had notice of their relevance to the

moving party's claim. *Id.* A company's failure to direct employees to preserve evidence as requested in a hold letter can constitute bad faith. *See, e.g., Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1280–81 (M.D. Fla. 2009). And the selective preservation of relevant evidence in the face of imminent litigation can evince bad faith, even if destruction was pursuant to routine policy. *See Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 748 (8th Cir. 2004).

The Court finds the circumstances in this case sufficient to show bad faith on the part of Peraton. Peraton knew of the impending litigation and instructed employees not to delete emails about the matter. Doc. 63, Pl.'s Sanctions App., 6. But although Peraton employees regularly used their personal cell phones for business purposes, Peraton did not instruct its employees to preserve text messages. *Id.* at 9, 22. As explained in Section III.A.1, *supra*, a reasonable factfinder could conclude the text messages between Stemberger and Capalbo were relevant to Miramontes's claims. Peraton's failure to preserve its employees' text messages, despite receiving a litigation hold letter specifically asking that they be preserved, demonstrates bad faith. *See Swofford*, 671 F. Supp. 2d at 1280–81. And because Peraton received the litigation hold letter, it cannot rely on Stemberger's routine practice of deleting text messages as a shield. *See Stevenson*, 354 F.3d at 750 ("After the specific document request for track maintenance records, Union Pacific cannot rely on its routine document retention policy as a shield."). Because the Court finds Miramontes has shown spoliation, the Court turns to sanctions.

**B.** *Denying Summary Judgment and Granting Additional Discovery Are Appropriate Sanctions*

Having found spoliation, the Court turns to the appropriate sanctions for Peraton's conduct. In so doing, the Court must ensure that the selected sanctions are "no harsher than necessary to respond to the need to punish or deter and to address the impact on discovery." *Rimkus*, 688 F. Supp.

2d at 618. As mentioned, Miramontes requests the Court find "liability based on discriminatory practices." Doc. 62, Mot. Sanctions, 11. Striking a party's answer and defenses to liability is one of the most severe sanctions at the Court's disposal and is only appropriate when the spoliating party's conduct is egregious. *See Ashton*, 772 F. Supp. 2d at 805. Peraton's conduct here does not rise to that level. Significantly, there is no evidence that Peraton directed Stemberger to delete the messages. The Court therefore finds such a severe sanction is unwarranted.

The Court finds denying Peraton's Motion for Summary Judgment (Doc. 30) is an appropriate sanction. A reasonable factfinder could have found the deleted text messages contained relevant information. This information could have raised a dispute of material fact concerning whether Peraton discriminated against Miramontes. Because Miramontes was deprived of this evidence on summary judgment, the Court finds Peraton should not be allowed to benefit from this deletion. For these reasons, the Court **DENIES** Peraton's Motion for Summary Judgment (Doc. 30). Accordingly, Miramontes's Motion to Strike Defendant's Summary Judgment Evidence (Doc. 37) is **DENIED AS MOOT**. Additionally, to allow Miramontes to overcome the prejudice resulting from the spoliation, the Court permits Miramontes five additional interrogatories and three additional requests for production. The interrogatories and requests for production need not relate to the text messages. Thus, the Motion for Sanctions (Doc. 62) is **GRANTED in part**.

## IV.

## CONCLUSION

As explained above, the Court finds Peraton had control of the text messages about Miramontes on Stemberger's phone. Peraton had a duty to preserve these messages because a reasonable factfinder could conclude they were relevant to Miramontes's case. Stemberger

intentionally destroyed the text messages, and Peraton is vicariously liable for this destruction. And Peraton's failure to tell Stemberger to preserve these messages, despite Miramontes specifically requesting that it do so, evinces bad faith. Thus, Stemberger's deletion of the messages constituted spoliation by Peraton.

The Court concludes appropriate sanctions for this spoliation are denying Peraton's Motion for Summary Judgment and permitting Miramontes to serve five additional interrogatories and three additional requests for production. The interrogatories and requests for production must be served within fourteen (14) days of the date of this order.

In sum, the Court **GRANTS in part** the Motion for Sanctions (Doc. 62), **DENIES** Peraton's Motion for Summary Judgment (Doc. 30), and **DENIES AS MOOT** Miramontes's Motion to Strike Defendant's Summary Judgment Evidence (Doc. 37).

SO ORDERED.

SIGNED: June 6, 2023.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 14 -